Next up, we have MetLife Life and Annuity Company of Connecticut v. Ann Herrera, Uzo Akpele, AIE Surgical Practice LLC Defined Benefit Plan Next up, we have MetLife Life and Annuity Company of Connecticut v. Ann Herrera, Uzo We'll wait just a minute until everybody's settled. All right, thank you, counsel. You may begin. May it please the Court, I'm Robert Wayne. I represent the appellate in this case, Ms. Ann Herrera, seated here, who is the standing Fulton County Administrator and was reported as Temporary Administrator of the Estate of Ignatius Akpele, which is pending in the Probate Court of Fulton County. This case involves an appeal from what a life insurance policy purchased in 2005 by Dr. Akpele. In 2009, he was diagnosed with terminal cancer. Just so you know, and you don't have to spend your time on it, I think we're all familiar with the facts. Got it, Your Honor. We seek reversal of the lower court's ruling denying the enforcement of Herrera's settlement agreement, which was iterative to between counsel for the parties, which provided for a 50-50 distribution of the net proceeds of the interpled funds. The parties had just, in June of 2013, settled a Pacific Life case in which Dr. Akpele had removed the MetLife annuity and exchanged it for a Pacific Life fund. It also was a pre-distribution settlement of ERISA protected funds, dividing it between Ms. Akpele and Entrust the Two Children. In that case, the estate had no direct financial interest in the Pacific Life case, whereas in this case, the estate was the default beneficiary. Moreover, we believe the evidence showed that Dr. Akpele had abandoned his DB plan and was seeking to maximize the money flowing for his two children. I'd sent various emails and so forth back and forth to Mr. Niku, asking about settling the case. We had four telephone conversations. He said he would finally, he would consider the settlement depending on what the terms of the agreement were. So I sent him a detailed, written settlement agreement and asked that he confirm it. But you never had any cross-claim against the Akpeles, did you? Did you ever file a cross-claim? We never filed a formal cross-claim. How could you be arguing this whole issue if there's no cross-claim? We, in our subsequent pleadings, moved for the settlement. The settlement was reached and then we continued at that time that we were entitled to be paid the funds by virtue of the settlement to the funds. The pleadings can be amended by subsequent pleadings and we, by our motion to compel, a motion to enforce, was seeking the money by virtue of the settlement. How do you get around the Kennedy case and the Kensinger case, which where the Supreme Court, and of course the Third Circuit, which is not binding on this Court, has said that the money has to be paid to the fund and then once the money is paid out to the beneficiary, then subsequent litigation can take place as to whether or not the person receiving the money is ultimately entitled to it. Yes, Your Honor, we contend that the lower court properly ruled that the money must be first be paid to the trustee who is subsequently appointed, was not even a party when the agreement was first reached, but the order should also have recognized that there was a sub-agreement reached between the then-existing defendants as to the division of the post-distribution funds. But the judge said there were genuine issues of material fact about that. Requiring an evidentiary hearing, which was denied, but we believe that denial of that order... Let me stop you for a second. Evidentiary hearing was denied because the Court didn't actually decide that issue. Right. The Court, in denying the motion to enforce, stated in his order that they were denying the motion to enforce because there was an unresolved question of fact as to whether Mr. Enique ever communicated his acceptance or communicated his limitation of authority to me. I said that he never said that. He said he did. The Court, in the wording of the order, says there requires to be an evidentiary hearing as to whether or not he ever told me there was a limitation of authority. We contend that the cases state that once an attorney communicates his acceptance of a settlement, his acceptance of that settlement in writing precludes any limitation of authority. But again, the Court found there was a material issue of fact, and I don't see any error in that determination. And because it never actually rendered a ruling on whether or not there was in fact a settlement agreement, in other words, it didn't say, yes, I find a settlement agreement, or no, I find no settlement agreement, where is the error? We believe that it's error because the order ignores and leaves open the question of the enforceability of the pre-distribution settlement agreement, which was reached between the parties. The trustee had argued that not only was he not bound by the settlement agreement, but that the settlement agreement, if it was entered into, was void ab initio. And if we But all that the district court decided was that ERISA precluded the enforcement of the settlement agreement against the DBP trustee. Yes, Your Honor. Right. So, I mean, that's true. It does. So in any case, why does it matter? It seems irrelevant to that issue, whether or not there was in fact a settlement agreement between the Akpeles and Ms. Herrera. Because it leaves us open to the question of Reischte Dikada, because the issue of their But is that a proper, is clarifying an order to say that when the order itself, I think to anybody who reads it, is susceptible of the construction that we've just described here, is that seeking clarification of that an appropriate reason for reconsideration or reopening of the order? I mean, it seems problematic to me. We've asked for a clarification of the order to state that the ruling the court made, saying the funds should first be paid to the trustee, should also state that it left open the question of the enforceability of the pre-distribution agreement, so that subsequently we could seek and recover against Ms. Akpele in a second proceeding. But I believe that's wasteful of the judicial economy. We've litigated the case for five years seeking the recovery, and now we have to file another lawsuit after the distribution is made, when those issues were already joined. Well, maybe not necessarily. If you say you had a cross-claim or intended to amend the agreement, would it be remanded for the court to make a determination with respect to whether or not there was a settlement agreement? If there was, then the beneficiary under the plan would be required to act in accordance with the settlement. I think pleadings must be construed to promote justice, and I believe it was clear by virtue of the pleadings that we were claiming a half interest in the proceeds of the net proceeds once they were distributed. I understand that, but let's assume procedurally you're fine. What we do is remand it back to the district court and have the district court make a final determination, assuming there's jurisdiction and so forth, as to whether or not there was a settlement. And once the money is paid to the beneficiary of the plan, then the court will then make a determination as to whether or not there was a settlement agreement, and the money has to be divided in accordance with that. Yes, Your Honor, that's the two options you have. One is to remand it back to the district court to have the evidentiary hearing that was promised but never given, or second, the court could rule that by virtue of the law there was a binding settlement agreement, and the court could amend the order saying that the money should be paid first to the trustee, and then she should pay the other half to the net proceeds to the... Another issue that's been bothering me that's somewhat tangential, but here we have two lawyers arguing about whether it's a settlement. They're key witnesses, and yet you're arguing the matter based on your testimony and the testimony of your opponent. Isn't there something anomalous about that? It was troubling. When we had gone, we were supposed to have an evidentiary hearing back in April 2016. We'd gone prepared to have that hearing. I had Ms. Russell prepared to cross-examine me on the basis of whether or not I had reached a settlement with Mr. Eco. We had intended to go forward with a hearing. I was prepared to have counsel cross-examine me on the issues of what we had done, the emails we'd exchanged, our telephone conversations, but the court listened to the parties and stopped it. I don't want to put words in Judge Bartle's mouth, but what Judge Bartle said makes me think of the advocate-witness rule, which seems to be kind of a problem, but I don't know if we need to address it necessarily here, but it seems like it's a consideration. Under the advocate-witness rule, you're not supposed to have counsel both prosecuting or defending the case and serving as a witness in that same case. There would also always be a problem when the settlement's reached to counsel, and the court has repeatedly held that when there is a dispute over an attorney-settlement authority, there must be an evidentiary hearing between the counsel as to what actually transpired in that case. I know the attorney-advocate rule is a problem, but how else do you resolve when you have two attorneys who both say different things about the settlement of the case? There should have been a hearing below before the court got to the second part. The court leapt over that and went to dispersing the money to the trustee in this case. All right, thank you. Thank you, Your Honor. You've reserved three minutes for rebuttal. Thank you. All right, we'll hear from MetLife now, please. Good morning, and may it please the Court, I'm Lisa Bondurant here on behalf of MetLife Life and Annuity Insurance Company of Connecticut. We are the appellee in the cross-appeal filed by the defendant, Act Pelles, against us after the district court judge entered summary judgment in favor of MetLife on all issues. The district court's order, in all respects, was correct and should be affirmed. I will explain briefly why that is. I understand I do not need to go into the facts of this case. Your Honors understand that this defined benefit plan was funded in part with the MetLife insurance policy and that the beneficiary at all times was the plan and that upon the death of Dr. Act Pelle, the trustee of the plan, Dr. Act Pelle was deceased and that when MetLife reached out to the family and asked the family to find the trustee and make a claim, instead of doing that, the Act Pelles individually, Ms. Act Pelle and her minor child, filed claims to the proceeds. MetLife was then presented with conflicting claims and the federal rule 22 filed its complaint and entered pleader naming as defendants, Ms. Act Pelle and her child who'd made claims through their lawyer, the estate because the policy provided that if the beneficiary was deceased, the estate was the beneficiary and then asked that since the trustee was dead, asked the district court to appoint a successor trustee so that the plan could be named and added as a defendant, which ultimately happened. So at that point, MetLife had advised the court that of the conflicting claims, paid into the courts to register the amount payable at the time of his death and at the conclusion of discovery, moved for summary judgment on behalf of MetLife as to all of the various counterclaims asserted by the Act Pelles. The judge granted that motion for these reasons, which we believe are in all respects correct and this court should adopt. It was clear, it has been clear for five years now that there are conflicting claims to the monies payable by reason of death of Dr. Act Pelle. Under rule 22, MetLife had the right and opportunity to enter plead. Judge Thrash agreed. We were entitled to discharge and an injunction on those points. The real sticking point, I think, for the Act Pelles is the amount that MetLife paid into the court's registry. The district judge was also correct on that amount because at the time he died, the amount payable was $516,108. This policy, as we know, had lapsed for non-payment of premium intentionally and the amount payable was the $516,000 that was paid into the court's registry. That issue became sort of the driving point, I think, for the under the terms of the policy and under the facts that the court had before it on summary judgment. The policy required the payment of premiums on an annual basis. The premium was paid for three years running from the issuance of the policy in 2005 through 2008. The facts show that in 2008, Dr. Act Pelle's financial advisors at FAQ, First Actuarial Corporation, and his insurance agents determined that this plan, under the applicable rules, this was a 412i plan, which is a defined pension benefit plan funded by insurance. Under the IRS and other pertinent regulations governing that plan, there had to be an equivalency between his compensation and the amount of insurance. He was maxed out. He was overfunded. He was instructed not to pay the premium for the 2009 year. That is clearly in the records. He was told that if he did not surrender the policy at the bare minimum, he could not accrue any further insurance in that policy. So, the record, according to the documents in the court's file, reflects that Dr. Act Pelle did not pay the premium intentionally, but the policy, which is good, has what is called a reduced paid up provision, and that is this kind of policy that is issued to a plan, and the terms of it, if it lapsed, oftentimes policies lapse and there's zero value at date of death. This policy is not that. It has a provision specifically allowing for the amount, and there's a formula the policy provides that if the policy lapses for nonpayment of premium, it goes into reduced paid up status. That was the status at Dr. Act Pelle's death in December 2010. There is no question of fact about that, and the district judge found that because he looked at the affidavit of Mr. McCarthy, the MetLife representative, who identified all of the applicable documents, the premium notices. He testified by way of affidavit about his personal knowledge. Well, there was no evidence that premium notices were sent in the last couple of years, correct? Your Honor. That they were sent or just prepared? Mr. McCarthy said they were prepared and sent in the normal course of business, which the judge agreed was sufficient under, there's the Midland Life case, which is a district court case, but similar situation that a witness with knowledge of the process and the documents can testify, and that evidence went unrefuted, by the way. It went unrefuted in the trial court. And then there was also evidence of a letter being prepared, right, to both the financial advisor, I guess, from Dr. Act Pelle and also to Dr. Act Pelle saying that it had elapsed. That's right. There are several documents in the court's file from to and from Dr. Act Pelle and to and from MetLife confirming that policy had elapsed. Indeed, Dr. Act Pelle was given a chance to reinstate. He was provided with a letter by MetLife after it elapsed, a year before he died, advising him it had elapsed, giving him the opportunity to reinstate. That letter went to both the financial advisors. Did anyone ever dispute that there was no premium added or to be paid in 2009? No accrual. No one resisted. No one disagreed. And there is absolutely no evidence that Dr. Act Pelle disagreed with that. In fact, the only evidence is that the policy elapsed for non-payment of premium. He was told not to pay it, and that's what he did. In fact, some of the evidence is that he was told not to pay anything in 2009. So that's the evidence on how much was paid into the court's registry. It was the correct amount. We paid the applicable interest, so the amount payable at the time of the interpleader was over $635,000. There's no question about, a fact about that, and this court should affirm that as well. There were any number of counter the Act Pelle's, which the district judge also dismissed on summary judgment, and which should have never been maintained longer than the point at which Mr. Iniklu, by way of his affidavit, and Ms. Iniklu, who's a lawyer, by way of her testimony, conceded in the district court's record that the proper plan beneficiary, the proper policy against MetLife by the Act Pelle's individually for the life insurance proceeds and for all of those tort claims should have gone, should have been dismissed. Instead, they were not. The Act Pelle's maintained and persisted against MetLife for torts, conversion, fraud, bad faith, breach of fiduciary duty, despite conceding that they had no claims. That's why Judge Thrash granted our motion for summary judgment on our attorney fees. So let me ask you this. That's the one aspect of this case that I'm having some problems with. Judge Thrash pretty much just said, you know, in general, if there's litigation associated with, you know, the interpleader that needs to be brought, you can give attorneys fees to the insurance company for their troubles, if there's some reason why, I guess. But in this case, the insurance or the need for the litigation arose from separate claims, these counterclaims that didn't really relate to the interpleader itself. In other words, they could have been filed as an entirely separate lawsuit. And I don't, I think there would be, there would not be a problem if the court had made a finding of bad faith or some other type of finding that would justify the imposition of sanctions that would then justify the award of attorney's fees. But I'm not sure that the court could, without providing, without making a finding of bad faith and without providing some other explanation, use the rules relating to fees to insurance companies relating to their interpleader work on these other claims, these counterclaims, which seem to me to be not really, you know, the heart of what we're talking about when we're talking about defending an interpleader. So maybe you can address that for me. I will, Your Honor. I first disagree that those claims could have been maintained independently. That's why they were dismissed on summary judgment. But I mean, putting aside whether or not there was sufficient evidence of them, I'm just saying the nature of the claims. Okay. Well, so putting that issue aside, under the Prudential v. Boyd case in the 11th Circuit and the September Tide case of the 2nd Circuit, if a party unnecessarily runs up the cost of litigation and causes there to be vexatious litigation and an interpleader party to have incurred, in this case, over $100,000 in fees related to these claims that could not be maintained, the courts have allowed attorney fees for the interpleading party. And Judge Thrash, I'm sorry to stop you again, but was there a requirement that a finding of bad faith be made? I don't recall in the September Tide case. I don't think there was in the Prudential v. Boyd case a bad faith. There was just an acknowledgement that a disinterested interpleading party who takes advantage of Rule 22 and protects itself from multiple claims and potential multiple liability is entitled to attorney fees. In this case, Judge Thrash didn't say there was a bad faith, but he certainly, in very strong terms, said that none of the counterclaims were maintainable by Ms. Akpeli or her child for a variety of reasons. He definitely did do that, and I think it's possible that he, in his own mind, thought there was bad faith. Whether or not he reached that conclusion, I don't know, but he certainly didn't make the finding expressly. And we've said in the There must be an express finding of bad faith, and the party being sanctioned must have the opportunity to have notice and be heard, and that didn't occur here either. That's what my concern is. Attorney fees are in connection with interpleaders who don't require a sanction, and they are allowed as a matter of law under the law of this circuit, Prudential v. Boyd. There's no requirement that I'm aware of under that case that there be a specific finding of bad faith or a sanction, nor an opportunity to be heard. But indeed, these defendants, Akpeli's, have been heard all through this case on their legal points and their positions and inconsistent positions, and I think to the extent this court, Judge Thrash, the district court needed ammunition by which to base his claims that these fees incurred by MetLife were unnecessary, there's a basis for it in the record. And so, I think the law of the 11th Circuit allows him to award our fees. I think the facts of this case, the claims that were asserted, the years of litigation that went on as a consequence of them, the fact that after the Akpeli's conceded the plan was beneficiary and they weren't, that we maintained those inconsistent positions, forcing MetLife to defend them, is ample evidence for the district court to have awarded the fees out of, I'm not quite sure whether the fees were to come out of the interpled fund or against the Akpeli's individually. That issue was not yet resolved because the attorney fee award was, the award in favor of MetLife was made, but the court has not yet entered judgment on the attorney fee award. So, with that, unless your honors have more specific questions about the evidence upon which MetLife relied or the legal issues raised by our papers and or in the district court, I have nothing further. Thank you, counsel. All right, we'll now hear from Mr. Anikwo. Thank you. May it please the court, my name is Bobby Anikwo and I represent the Oza Akpeli, who's sitting back there, and her son, who's now 13 years old. When this policy was purchased or set up, the child was one year old. When the father died, it was five years, seven years ago. Your honor, the key issue here, and I'll take the part of the Herrera case first. Now, we disagree that an evidentiary hearing was not held. We had the judge convened a meeting in a conference in his chambers in January of 2016. At the end of that meeting, conference, the judge set evidentiary hearings specifically to address the Herrera's claim, the contention that they were entitled to evidentiary hearing. And the notes, the docket notes, will show that it was specifically set as an evidentiary hearing to address the settlement issue. The court convened that evidentiary hearing on 23rd of February. However, during that hearing, the judge, after the judge, Judge Thrash heard everybody, then the judge decided that, took a few, five minutes or ten minutes, went back to the chambers, came back and said, well, neither of you had standing, neither of you had title to the property, you know, that the claim to have been settled. In other words, as I read that, it looked to me like what happened was the judge had on the issue here because there were no factual determinations made. There was not, it didn't get to that because the court thought it was irrelevant. Your Honor, we believe that it was by implication that the judge determined that neither, to have a contract, to have a settlement, you have to have two parties. No, but the judge never took testimony. Did the judge take testimony from you and from Mr. Wayne? No, Your Honor. So you weren't called to a witness stand and testified under oath, you weren't examined and cross-examined? Your Honor, I believe that Judge Thrash made a finding, a determination that... My question is, was there was no evidentiary hearing in the sense of, you weren't called as a witness? No. Mr. Wayne wasn't called as a witness, you weren't examined and cross-examined under oath? You are correct. You are correct, Your Honor. There was no such hearing. However, we contend that although there was not, the court is not required to engage in futile activity. The court was not required to have a hearing where neither party, where the judge had already determined that neither party had a capacity or the right to settle based on a consideration that belonged to somebody else, the plan. You can't agree to... You can't bind the plan, but you could bind each other. In other words, once the money was paid by the plan to a party, that party could then say, well, I agree to give half to some third party. And that was possible, isn't it? Judge Barrow, but that was not the forum for that. The forum for to have that, that's a different case altogether. That's not something that the judge, the court was required to undertake because it would have then been a supplemental claim that the judge had, the court had under, you know, 42, 1367 or something where the court could have taken supplemental jurisdiction on that. And if they wanted to go to state court to litigate that matter, then that's their prerogative. But they're the ones that brought the case at the federal court. And the court made the implied decision that neither of you had the capacity to contract, to settle based on consideration of property that belonged to a trust, to somebody else that was not present when the purported settlement was discussed. Can I turn your attention for a moment to the attorney's fees issue? I have two questions there. Same question that I asked Ms. Bondron, which is, is there some difference between awarding attorney's fees in an interpleader insurance case on counterclaims versus awarding attorney's fees associated with bringing the interpleader itself or defending the interpleader itself? That's the first question. And the second question is, regardless of your answer to that,  is there some reason why we shouldn't send it back to the district court to consider whether the attorney's fees should be apportioned between the attorneys and the parties? I mean, if you were to, if there were a sanctions kind of situation, one of the things that we require is that the district court make a finding as to who's responsible, that is the party or the attorney or both. So those are the two issues that I'd like you to address with respect to the attorney's fees, if you don't mind. Thank you, Your Honor. Judge Rosenbaum, I believe that the court, and I cited that in my briefs, the practice, the normal general practice that attorney's fees are not awarded in interpleader claims because the courts consider that to be a cost of doing business, that the interpleaders are filed by insurance companies for their own protection. But in this case, there are also counterclaims, so. And so the attorney's fees was not, in fact, awarded on the basis, you will not find anywhere in the court's order where attorney's fees was awarded on basis of interpleader. It was awarded on the counterclaims. However, the court did not, and the rule in this jurisdiction, and as I know, is that the court is correct. You have to find bad faith. But the court's one statement indicated that for the inconvenience of having to respond to counterclaim, I'm going to award you attorney's fees, and Your Honor, respectfully, is not, that's not the standard. And the court's, the law court's, Judge Thrash's statement was clear because they had to respond to counterclaim. It didn't say, it doesn't say that, well, the counterclaim was frivolous or that it was, it had no merit or that whatever reason, but that simply that, because MetLife had to respond to the counterclaim. It awarded attorney's fees, and it should be reversed. That's not the standard. Bad faith has to be found. So the, contrary to Harris' contention, to MetLife's contention, it is not, the normal practice is to deny attorney's fees and interpleader claims. And I cited a series of cases in my attorney's fees challenge, or response, that's off the record. Can we affirm the award of attorney's fees if the record supports a finding of frivolousness or bad faith, even though the district court didn't make any specific findings? Your Honor, the American rule, basically, of course, is that each party bears their own attorney's fees unless there's that bad faith, unless there's some basis for the court finds that justifies. Let's assume you find a basis in the record, but the district court didn't specifically make a finding. Is that sufficient? Your Honor, that still wouldn't be sufficient because then, what it means is that a party that exercises their right to file a counterclaim, that the court correctly pointed out, could have been filed separately. And I mentioned in my briefs that the claim could have been filed separate and apart from this interpleader. And so, there's got to be a lot more than... But I think she's asking a different question, right? I think Judge Pryor is asking you, set aside the interpleader attorney's fees rule. You know, let's just assume that this was awarded, and even if it wasn't, can we, in the first instance, look at this full record and say, you know what? We find bad faith. We are making a finding of bad faith. Can we, as a court, do that? Am I getting this right? Thank you. Well, no, I believe that is within the province of the trial court to make that determination as the court of first instance. And so, because no evidence, there has not been a trial in this case. There has not been any type of hearing. This case is not a case that's susceptible to summary judgment. So, you're saying that you would have to have an opportunity to be heard before we could make that finding? Thank you, Your Honor. Okay. We have to have an opportunity to be heard. Thank you, counsel. Just one moment, please. Thank you, counsel. Thank you, Your Honor. All right. May it please the court. My name is Brent Wilson, counsel for the plan. Hello, Judge Rosenbaum, Judge Pryor, and welcome to Atlanta, Judge Bartlett. We simply wish to make three simple points. Number one, with respect to this appeal, the court granted the trustee's motion for the disbursement of funds. The plan provides that the funds should be dispersed to the trustee. The trustee wishes to do nothing more than to follow the specific instructions of the plan, receive the funds, and disperse those funds as are set forth in the plan. The court's order granting the trustee's motion for disbursement was entirely proper with respect to any evidentiary hearing. I think Judge Bartlett pointed out the Kennedy case. With respect to any issue with respect to who is the appropriate recipient, that is a matter that can be litigated after the funds are distributed, not before the funds are distributed. And therefore, the trustee has no other option but to receive the funds and to distribute them pursuant to the provisions of the plan. Finally, the plan would indicate that it was not a party to any settlement discussions. As the court has pointed out, the district court judge did not make a finding that there was a settlement or that there was not a settlement. The district court simply made a decision that with respect to the terms of the plan, the plan provides that the funds must be received by the trustee. The plan mandates that no participant, beneficiary, shall have the right to alienate, anticipate, commute, pledge, encumber, or sign any of the benefits or payments which he may expect to receive contingently or otherwise under the plan except the right to designate a beneficiary or beneficiaries. Therefore, the funds in the registry of the court must be paid to the plan. I have nothing further to add to this discussion unless the court wishes to ask me any questions. I would defer my last minute to Mr. Neal. Thank you, counsel. I think that there were 45 seconds left. Mr. Niku, if there's 45 seconds that you'd like to use, if counsel has a few, feel free to do so. I just wish to quickly let the court know that, well, not let the court know, MetLife argued that Mr. Dr. Abele intentionally refused to pay the premiums due. That's not correct. Now, the notice from the, Dr. Abele had an administrative agency of FAC that advised it on whether to make payments or not, or the amount that should be made. But the ultimate decision as to how much should be paid into the fund in order not to go contrary to have excess funding was between MetLife and Dr. Abele. At no time ever had FAC ever communicated with MetLife as to how much Abele would pay. I refer the court to document 96-6, page 29 of 57. It shows that at the time that Abele... You can finish your sentence. Thank you, Your Honor. At the time that Dr. Abele was informed about the full funding, he was also told in that letter, an email, that if he intended to take his retirement by annuity instead of lump sum, that he could continue funding the plan. So he still had the option to fund the plan. However, MetLife never billed him. MetLife never told him, okay, this is how much you put in. MetLife never, at any point in time, even the so-called screenshots, they don't add up. Okay. Thank you, counsel. I think we have your argument. Thank you, Your Honor. Mr. Wayne. Your Honor, I just have two short points. As to Judge Bartle's question, the answer that we filed in the prayer for relief, it's document, I think, 6, C states that we asked the court to determine whether, or to the extent, Defendant Herrera is entitled to receive the assets of the case. So we did make a claim to the funds in that prayer for relief, but it wasn't designated a cross-claim because at that time, that issue was not ripe. We were still waiting for the settlement agreement to be signed and sent back to us.  It was only nine months later that the breach was, that they were negating the agreement, and we then moved forward for the motion to compel. The final thing I wanted to say was, Your Honors, could remand the case to the lower court to decide it, but we believe that based, as a matter of law, once an attorney agrees and confirms a settlement, then as a matter of law, you have the right to enforce that settlement agreement. You have the right to cut through another two years of litigation by saying, yes, the trustee should be paid. I'm not sure you can say that it was confirmed based just solely on the documentary evidence that's in the record. The problem is that Mr. Onikwu says that he said that, you know, it was all subject to confirmation by his client, and none of the written exchanges of information here, at least in my view, definitively preclude that from being correct. I don't see, in my view, the district court was right. There is a material issue of fact. If you think I'm missing something, if you could point me to specifically how you think this was definitively resolved in the written communications, that would be really helpful. I think if I say, if you read those three emails, the 23rd and 24th, you say, here is our written settlement agreement, please confirm that you accept it. That was my initial email to him. He then responds saying, the agreement is okay as revised, and then I see the agreement confirming his confirmation saying, this is to confirm that you've accepted our revised settlement agreement. Please sign it, have your client send it to me. I believe you have an offer, you have a request for a redraft, you have a counteroffer, then he accepts it. Don't you refer to it as the proposed settlement agreement? I mean, that's what it seems like you do to me, but maybe I'm mistaken. I thought you had referred to it as the proposed settlement agreement after all of this occurred. In my 24th email, I believe I referred to it as, this is to confirm that you've agreed to the settlement agreement. I believe that's my, in my second email, 24th, because I was still waiting for him to sign the agreement. Well, what I'm saying is you referred to it as the proposed settlement agreement. I'd have to look at the email that I recall. If you look at the three emails, I mean, he was proposing some of them, but after he accepted it, I believe I said that the agreement is proposed, but I believe you can construe all of them to say that he agreed to settle the case, but the court could still remand it for an evidentiary hearing before Judge Vranish. Okay. Thank you. Thank you, Your Honors.